Rona F. LaPRADE, Appellant,

v.

Maryann ROSINSKY, et al., Appellees.

No. 04–CV–15.

District of Columbia Court of Appeals.

Argued March 2, 2005.

Decided Sept. 1, 2005.

Jeffrey C. Tuckfelt, for appellant.

Stephen O. Hessler, Washington, DC, for appellee.

Before TERRY and REID, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

Appellant, Rona F. LaPrade, brought an action against appellees, Maryann Rosinsky and her husband, Charles Rosinsky, for damages for breach of an agreement to sell to LaPrade an undivided one-half interest in certain residential real property, and for the partition and sale of that property. The Rosinskys answered and counterclaimed, alleging slander of title and adverse possession and seeking imposition of a constructive trust, an order quieting title, an accounting and punitive damages. Upon consideration of cross motions for summary judgment, the trial court entered summary judgment in favor of the Rosinskys. On appeal, LaPrade argues: (1) summary judgment was inappropriate as there were genuine issues of material fact regarding the validity of the deed at issue; and (2) the trial court erroneously failed to apply laches to bar the Rosinskys' claim that the deed was void. We affirm.

## I.

This case arose out of a dispute over title to a one-half interest in a single family dwelling located at 411 Sixth Street, N.E., Washington, D.C. ("property"). On January 27, 1976, the Rosinskys signed a contract to sell to LaPrade "an undivided one-half interest" in the property, even though the property, at that time, still belonged to LaPrade and her then husband. Mr. Rosinsky later testified at his deposition that he signed the contract, although he did not know that what he signed was a contract when he signed it. Mrs. Rosinsky testified to the same effect. Subsequent to the execution of the contract, two deeds to the property were executed. The first deed was executed on March 12, 1976 ("March deed"). Through it LaPrade and her husband granted the property to the Rosinskys in fee simple. By the second, on its face dated and signed on May 3, 1976 ("May deed"), the Rosinskys reconveyed an undivided one-half interest in the property to LaPrade. Bearing the apparent signatures of both the Rosinskys and a notary public, Jean Stamback, the May deed was recorded with the Recorder of Deeds about a year later. However, according to Mr. Rosinsky, he neither signed the May deed nor authorized any person to sign it for him. He avers that he did not become aware of its existence until he attempted to apply for a loan to remodel the kitchen of the premises in question in 1985.

In a letter to LaPrade dated August 21, 1985, attorney Stephanie Y. Bradley wrote on behalf of the Rosinskys that Mr. Rosinsky did not have any knowledge of, or sign, the May deed, and that it was Mrs. Rosinsky who was induced by misrepresentation to sign both her name and her husband's without the consent of the latter. Bradley urged LaPrade to execute a quitclaim deed to reconvey the one-half interest to the Rosinskys. Otherwise, she stated, the Rosinskys would resort to appropriate legal action. However, they had taken no such action as of the time they answered LaPrade's complaint in this case in December 2000.

In 1986, the Rosinskys, through Bradley, filed a complaint with the Office of the Secretary of the District of Columbia in opposition to the reappointment of the notary commission of Jean Stamback, who had notarized the signatures on the May deed. They contended that Stamback falsely notarized the signature of Mr. Rosinsky affixed to the May deed by certifying a signature of Mrs. Rosinsky as Mr. Rosinsky's. As a result, the Office of the Secretary initiated an investigation into the complaint and sent a letter to LaPrade on March 24, 1986, requesting that she provide an affidavit regarding the events that occurred on or about the time the May deed was executed.

In response to the letter of the Office of the Secretary, LaPrade submitted an affidavit, as did her husband. The record on appeal does not include the affidavit of LaPrade's husband. LaPrade's affidavit of April 28, 1986, stated that Stamback personally observed the signatures of the Rosinskys when she notarized the May 1976 deed, but gave no indication that LaPrade had personal knowledge that Stamback did so. LaPrade further stated that she made the first few payments on the mortgage on the property, and that the Rosinskys did not retain Bradley to contest title to LaPrade's one-half interest until after LaPrade declined to sign a loan agreement through which the Rosinskys would finance the remodeling of their kitchen. The order of the Office of the Secretary states that Stamback testified that she and Mr. LaPrade went to the property to notarize some documents and found that only Ms. Rosinsky was at home,

and that she witnessed the signature of Ms. Rosinsky at the property and later that day the signature of Mr. Rosinsky at the office of John LaPrade. The Office of the Secretary credited the testimony of the Rosinskys over the testimony of Stamback and the affidavits of LaPrade and her husband, and found that Mr. Rosinsky did not sign the deed, and that Stamback falsely notarized the signature of Mr. Rosinsky by certifying the signature of Mrs. Rosinsky as Mr. Rosinsky's "act and deed." The Office of the Secretary issued an order on November 2, 1987, denying Stamback's application for reappointment as a notary public, but made no conclusion as to the validity of the deed.

LaPrade filed the instant action against the Rosinskys in November 2000, alleging breach of contract and seeking an order partitioning the property. In their answer, appellees raised various defenses including laches, statute of limitations and fraud, and advanced the counterclaims identified above. LaPrade moved for summary judgment on all counts of her complaint and all of the Rosinskys' counterclaims. The Rosinskys then filed a cross-motion for partial summary judgment on LaPrade's claims. The Rosinskys alleged that the May deed was void on the grounds that Mr. Rosinsky did not sign, or authorize Mrs. Rosinsky to sign, the deed and that the execution of the deed was not actually witnessed by the notary public. In support of her motion for summary judgment and her opposition to the Rosinskys' cross-motion, LaPrade offered the affidavit she had submitted to the Office of the Secretary in 1986.[1]

The trial court granted the Rosinskys' motion for summary judgment. It ruled, *inter alia,* that LaPrade's action for damages for breach of contract was barred by the applicable three-year statute of limitations, D.C.Code § 12–301(7) (1981), and that LaPrade was not entitled to partition as the deed that would have vested a one-half interest in the property in LaPrade was void because Mr. Rosinsky did not sign it or authorize Mrs. Rosinsky to do so in his behalf. Accordingly, the trial court went on to deny LaPrade's motion for summary judgment on the counts of her complaint, granted the Rosinskys' cross-motion for summary judgment on those counts, and dismissed as moot the Rosinskys' counterclaims asserting adverse possession and constructive trust, and seeking to quiet title. In addition, the court ruled that the Rosinskys had failed to establish a prima facie case for their counterclaims for slander of title and punitive damages, and granted LaPrade's motion for summary judgment on those counts. As a result, the only claim that survived the trial court's rulings on the cross-motions for summary judgment was the Rosinskys' action for an accounting. Later, the Rosinskys voluntarily dismissed it. This appeal followed.

## II.

■■■ The trial judge addressed first the Rosinskys' motion for partial summary judgment on LaPrade's complaint.[2] Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

1. After the trial court granted summary judgment to the Rosinskys, LaPrade filed a motion to reopen and reconsider, to which she attached an affidavit of her husband. The court in its discretion denied the motion.

2. Defendants stated that they referred to it as a motion for partial summary judgment only because it did not relate to their own affirmative defenses or to "several counterclaims which in their view would survive for trial and/or further proceedings," but did not identify those counterclaims.

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Super. Ct. Civ. R. 56(c); *Chang v. Institute for Public–Private P'ships, Inc.*, 846 A.2d 318, 323 (D.C.2004). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, after which the burden shifts to the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Musa v. Continental Ins. Co.*, 644 A.2d 999, 1002 (D.C.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). To carry this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, in deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences from the evidence in her favor. *Herbin v. Hoeffel*, 806 A.2d 186, 191 (D.C.2002). The role of the court is not to try an issue as factfinder, but rather to decide whether there are genuine issue of material fact to be decided by the jury. *Holland v. Hannan*, 456 A.2d 807, 814–15 (D.C.1983).

■ After listing certain material facts it deemed undisputed, the trial court addressed plaintiff's claim of breach of the

January 1976 agreement of the Rosinskys to convey to Mrs. LaPrade an undivided one-half interest in the property.[3] LaPrade did not commence her action to recover for the alleged breach until November 29, 2000. As the trial court observed in its order granting defendants' motion, even if it is assumed that LaPrade was not aware that the May 1976 deed was not in fact executed by Charles Rosinsky until the ruling of the Office of the Secretary of the District of Columbia to that effect on November 2, 1987, LaPrade was required by the applicable three-year statute of limitations to file her action for breach of contract by November 2, 1990 rather than ten years later as she did. The court's assumption represents a generous view of the facts, one most favorable to LaPrade, as she was necessarily well aware of the Rosinskys' position by the time she executed her affidavit on April 28, 1986. We perceive no error in this court's grant of summary judgment on this count.

■ With respect to the partition claim, the trial court determined that the undisputed evidence showed that Maryann Rosinsky signed Charles Rosinsky's signature to the May deed without his permission. The court found expressly that Charles Rosinsky never signed the May 3, 1976, deed and did not authorize Mrs. Rosinsky to do so. In so finding, the court relied primarily on Charles Rosinsky's unequivocal deposition testimony.

The trial court obviously viewed as unsuccessful the appellant's effort to make a countervailing showing sufficient to create a genuine issue of material fact. We agree. It is most significant that there was no evidence offered by LaPrade that directly contradicted Mr. Rosinsky's testi-

---

**3.** The trial court's order mistakenly refers to John C. LaPrade as an additional party to the contract.

mony. Rather than execute a fresh affidavit tailored to meet head-on the thrust of the Rosinskys' motion for summary judgment, LaPrade offered the 1986 affidavit she had submitted to the Office of the Secretary of the District of Columbia in connection with its consideration of the application of Jean Stamback for reappointment of her license as a notary public. LaPrade's 1986 affidavit fails to state whether she personally witnessed the placement of Mr. Rosinsky's signature on the May 1976 deed. It states that Jean Stamback observed the signing, but does not purport to make that statement on personal knowledge.

As LaPrade's 1986 affidavit does not create a genuine issue regarding Mr. Rosinsky's signature, we must determine whether other evidence supports LaPrade's position. LaPrade did not adduce the testimony of an expert on handwriting or any other evidence that bore directly upon whether Mr. Rosinsky signed the May deed. The record contains the January 27, 1976, contract, which, on its face, appears to have been entered into by the Rosinskys and LaPrade. Pursuant to that contract, the Rosinskys agreed to convey to LaPrade an undivided one-half interest in the premises (which the Rosinskys did not yet own).[4] While the existence of this document suggests that Charles Rosinsky would have been willing at some point to join in the conveyance of a one-half interest in the property, it lends no substantial support to the contention that Charles Rosinsky actually signed the May 1976 deed.

Mrs. LaPrade also states in her affidavit that she "made a number of payments" on the Rosinskys' monthly note on the premises. Charles Rosinsky testified that LaPrade acted only as real estate agent to rent the basement apartment of the premises. The resolution of this dispute in LaPrade's favor would not substantially advance LaPrade's position regarding the execution of the deed.

■ In short, after considering together all the bits of evidence that arguably might tend to support appellant's opposition to defendants' motion for summary judgment, we agree with the trial court that no genuine issue of material fact was presented by the evidence as a whole, and that the undisputed evidence showed that Charles Rosinsky neither signed the May deed nor authorized anyone else to sign it for him.[5]

■ Before we leave the issues that surround the trial court's entry of summary judgment against appellant on her complaint, we note that LaPrade broadly asserts that the Rosinskys are barred by laches from asserting in 2000 that the May 1976 deed was void because Charles Rosinsky had not signed it or authorized another to sign it in his behalf. In her motion for summary judgment, LaPrade argued, *inter alia,* that all of the Rosinskys' coun-

---

4. The trial court's order granting defendants summary judgment stated that it was undisputed that the Rosinskys entered into the January 1976 agreement. The Rosinskys, however, in their depositions, denied that they knowingly signed such a document, but testified that it was slipped in front of them without their knowing what it was. Whether this fact was disputed or undisputed has no effect on the outcome of this appeal.

5. LaPrade also argues that the trial court erred in giving preclusive effect to the finding of the Office of the Secretary of the District of Columbia that Mr. Rosinsky did not sign the May deed, and that Jean Stamback falsely notarized the signature of Mr. Rosinsky on that document. It is correct to state that the trial judge referred to the finding of the Office of the Secretary as an undisputed fact, but the trial court placed no reliance on that finding, much less gave it preclusive effect.

terclaims and defenses were barred by laches.

 Appellant is not in a position to assert laches in support of her complaint. Laches may be used as a shield, but not as a sword by one seeking affirmative relief. *See 118 East 60th Owners, Inc. v. Bonner Properties, Inc.,* 677 F.2d 200, 204 (2d Cir.1982) (as party seeking declaratory relief is "aggressor" in litigation, equity precludes use of time bar as sword); *Short v. Rapping,* 135 A.D.2d 624, 625, 522 N.Y.S.2d 201 (N.Y.App.Div.1987) (laches may be invoked as defense against stale claims but not used to obtain dismissal for want of prosecution of medical malpractice action by infant plaintiff stationed overseas in military service); *Howorka v. Harbor Island Owners' Ass'n, Inc.,* 292 S.C. 381, 356 S.E.2d 433, 436 (Ct.App.1987) (plaintiff cannot urge laches to bar right asserted as defense); *Corona Properties of Florida, Inc. v. Monroe County,* 485 So.2d 1314, 1318 (Fla.Dist.Ct.App.1986) (laches acts as shield to action and has no application to case where it is intended to be used as sword); *see generally* 30A C.J.S. *Equity* § 128 (1992).

 Thus, LaPrade cannot use her broad assertion that the Rosinskys are barred by laches to keep the Rosinskys from raising a defense on the merits against her action for partition. A plaintiff may not use laches to bar a right asserted merely by way of defense. *Northern Pac. R.R. Co. v. United States,* 277 F.2d 615, 624 (10th Cir.1960) (plaintiff could not successfully plead laches on part of defendant where, after dismissal of their counterclaim, defendants did not seek affirmative relief by cross complaint, cross action, or other like pleading); *Howorka,* 356 S.E.2d at 435; *see generally* 30A C.J.S. *Equity* § 128. The trial court did not address the issue of appellees' alleged laches in disposing of LaPrade's complaint, nor was it necessary for it to do so. LaPrade initiated the litigation and, for the reasons stated above, could not use laches to defeat appellees' defense.

### III.

Having granted summary judgment in favor of the Rosinskys on LaPrade's complaint, the trial court turned to LaPrade's cross-motion for summary judgment on the Rosinskys' counterclaims. The court ruled that its disposition of LaPrade's complaint rendered moot the Rosinskys' counts alleging adverse possession and seeking an order quieting title and the imposition of a constructive trust. The court further ruled that the Rosinskys had failed to make out a prima facie case of slander of title and entitlement to punitive damages. The Rosinskys have not challenged these rulings on appeal, and we need not address them. After the court entered its rulings on the foregoing aspects of their counterclaims, the Rosinskys voluntarily dismissed their count seeking an accounting, thus disposing of all claims and counterclaims and making the case ripe for appeal.

We are aware that LaPrade has argued vigorously that laches should have been applied by the trial court to bar various of the Rosinskys' counts for relief, but given the procedural posture of the proceedings, it was not necessary for the trial court to consider them, nor need we do so.[6]

---

**6.** Not before us is the question whether LaPrade could have successfully used a laches argument if the Rosinskys had sued her in the first instance or the court otherwise was required to rule upon a claim by the Rosinskys for affirmative relief. Issues that would arise include whether LaPrade was a wrongdoer and thus unable to invoke laches; *see DeCosta v. Viacom Int'l, Inc.,* 758 F.Supp. 807, 816 (D.R.I.1991), *rev'd on other grounds,* 981 F.2d

Accordingly, the judgments on appeal are

*Affirmed.*

602 (1st Cir.1992) (laches may not be used to shield party from consequences of conduct it knows to be wrongful); whether LaPrade was precluded from asserting defense of laches because she contributed substantially to de- lay; *see Evans v. United States Fid. & Guar. Co.,* 127 A.2d 842, 848 (D.C.1956); whether the risk of a forged deed would have fallen on her as one who claimed to be a purchaser; *see Martin v. Carter,* 400 A.2d 326, 330 (D.C. 1979) (citing 7 Thompson Real Property § 3233 (repl. ed. 1962)); *Anderson v. Village Home- builders, Inc.,* 401 Ill. 60, 81 N.E.2d 430, 434 (1948); and whether LaPrade could use the defense of laches as a basis for giving effect to a void deed. *See Polly v. Navarro,* 457 So.2d 1140 (Fla.Dist.Ct.App.1984). In light of its disposition of LaPrade's complaint, the trial court did not deal with these issues.