Filed 1/29/15  Lizza v. City of Avalon CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TIBERIO P. LIZZA, | B249859 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS135644) |
| v. | |
| CITY OF AVALON, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County,

Luis A. Lavin, Judge.  Affirmed.

Law Offices of George T. Kelly and George T. Kelly for Plaintiff and Appellant.

Best Best & Krieger, Scott H. Campbell, Kira L. Klatchko and Irene S. Zurko for

Defendant and Respondent.

Tiberio P. Lizza appeals a judgment denying his petition for writ of administrative mandamus against the City of Avalon (city). He seeks to compel the city to grant him a variance from the city's front setback requirement. Lizza contends (1) the city should be equitably estopped from denying a variance; (2) he is entitled to a variance based on the doctrine of laches; and (3) the variance is de minimis, would not offend public policy, and therefore should be granted. We conclude that Lizza has shown no abuse of discretion by the city and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Building Permit and Deck Extension*

Lizza resides in the City of Avalon on Santa Catalina Island. Balconies, also known as decks, in front of his house overlook Avalon Bay and a city stairway. The upper level deck originally was built in 1986 with one corner extending to the northern property line. The deck was not parallel to the property line. The city's current front setback requirement for the lot is three feet. The upper deck was legally nonconforming.

Lizza applied to the city in February 2009 for a building permit to rebuild and repair the existing decks. His application described the proposed work as rebuilding the lower deck completely, "repair upper deck as needed," and installing new footings, posts, and beam. The city granted the application and issued a building permit in February 2009.

Lizza's contractor, David Zeller of Zeller Construction, did not merely repair the upper deck, but also extended it north by approximately 12 to 14 inches. An adjoining neighbor notified the city during construction. A building official measured the upper deck and determined that it was larger than the original. Zeller stated that his crew had made an error reading the dimensions in his absence.

2. *Encroachment Permit*

The city informed Zeller in April 2009 that Lizza required an encroachment permit for the upper deck extension. There is conflicting evidence as to whether the city also informed Zeller at that time that a variance from the setback requirement was

2

required or only that a variance might be required. Lizza, through Zeller, applied for an encroachment permit in April 2009, but he did not apply for a variance at that time. The city manager granted an encroachment permit in April 2009 allowing part of the upper deck to encroach over the city's street easement.[1]

3.    *Variance Application*

The city's planning director, Amanda Cook, sent a letter in September 2010 addressed to Lizza at the same post office box address provided in his encroachment permit application. The letter stated that the building permit issued in February 2009 did not authorize the extension of the upper deck and that he required a variance from the setback requirement in addition to the encroachment permit granted in April 2009. The letter stated that Lizza must submit a variance application within 30 days. The post office returned the letter undelivered.

Cook sent Lizza a second letter in July 2011 stating the same information. A code enforcement officer personally delivered the letter to Lizza at the subject property. Lizza, through Zeller, applied to the planning commission in July 2011 for a variance from the front setback requirement.

Lizza's variance application stated that strict application of the zoning ordinance would result in unnecessary hardship because other homes in the area also had less than the required setback and because the original deck extended into the setback area. It stated that exceptional circumstances justified a variance because there were no properties adjacent to the front property line, the upper deck already encroached on city property and had been granted an encroachment permit, and only a portion of the deck extended farther into the setback area. It also stated that the requested variance would not affect the public welfare because the deck was above street level, the extended deck

---

[1]    The City of Avalon Municipal Code authorizes the city manager to issue encroachment permits for "minor encroachments." (*Id.*, § 4–9.104.) We judicially notice the cited municipal code section. (Evid. Code, § 452, subd. (b).)

would not impact the harbor view from the adjacent property, and the variance would only allow a small increase in an existing setback nonconformity.[2]

The planning commission held a public hearing on the variance application in August 2011. Cook stated at the hearing that Lizza was told during construction that both an encroachment permit and a variance were required. The planning commission staff report also stated, "The owner was informed that an encroachment for one corner of the structure and a setback variance would be required."

Zeller stated at the planning commission hearing that at the time he obtained an encroachment permit for Lizza "we were told we may not need a variance." Zeller stated, "We weren't told [that] we needed a variance at that time. We were told we may need one, and we talked about that at length back and [forth] at that time, we do not have to get a variance, and Ronny looked at it, Steve looked at it, we got encroachment permits, so we were allowed to finish the deck to completion, the deck boards, the rails, everything was allowed to be put on. That's what we were doing after the encroachment permit. So the owner an[d] myself, the assumption was made with an encroachment permit that that was then being approved and allowed as [inaudible]."

Sheryle and Tom Fipp, owners of a property adjacent to Lizza's, opposed the variance application. They stated at the hearing that the extended deck impacted their view.

The planning commission denied the variance application. Lizza appealed the denial to the city council.

---

[2]    Government Code section 65906 states, in pertinent part: "Variances from the terms of the zoning ordinance shall be granted only when, because of special circumstances applicable to the property, including size, shape, topography, location or surroundings, the strict application of the zoning ordinance deprives such property of privileges enjoyed by other property in the vicinity and under identical zoning classification. [¶] Any variance granted shall be subject to such conditions as will assure that the adjustment thereby authorized shall not constitute a grant of special privileges inconsistent with the limitations upon other properties in the vicinity and zone in which such property is situated." (See also City of Avalon Mun. Code, § 9–8.405.)

4. *City Council Hearing*

The city council held a public hearing in November 2011. Cook stated at the city council hearing that the city first determined that an encroachment permit was required for the deck extension, and after receiving complaints from neighbors later determined that a variance was required as well. The staff report also stated that the planning department initially determined that an encroachment permit was needed, and after inquiry by the adjoining landowner determined that a variance was also required.[3]

Zeller spoke at the city council hearing on behalf of Lizza. Zeller stated that a building inspector informed him that an encroachment permit was needed. He stated that after obtaining an encroachment permit, "We asked if there was anything else, and they said no, that's it." He stated, "It was pretty much finished, so we just needed to paint and finish things up. There was no mention at the time that we needed to have a variance to complete the project. Approximately 18 months after completion of the project the city made the attempt to contact Mr. Lizza." Zeller emphasized that upon realizing that the rebuilt deck was larger than the original, "we came, we got the encroachment permit, and we ask them, is there anything else we need to do? I mean, I really need to emphasize that because that's what we relied upon and then we finished the project." He stated further, "we relied upon the city and the encroachment permit and the lack of requirement for the variance . . . ." He stated that if the city had told them to move the deck back, "we certain[ly w]ould have, but they didn't say that, and that's the part that the difficult [part] for me to come up with any other explanation other than we were told by the city that it was okay to continue to build the project, which we did."

Sheryle Fipp stated at the hearing that the extended deck impacted the view from her home and allowed someone standing on Lizza's deck to see inside her home.

---

[3] Cook's statement at the city council hearing and the staff report for that hearing appear to differ from her statement at the planning commission hearing and the staff report for that hearing, which had indicated that before issuing an encroachment permit the city informed Zeller that a variance was also required.

City council members stated that the city was partly to blame for allowing construction to continue with only an encroachment permit and without a variance. Cook agreed. When asked to estimate the cost to restore the upper deck to its original width, Zeller replied that the loss was about $1,500. The city council decided to deny a variance while sharing financial responsibility with Lizza by refunding the fees paid for the variance application and appeal.

The city council denied a variance. It found that strict application of the zoning ordinance would not deny the property any privileges enjoyed by other properties in the vicinity under identical zoning classifications and that there were no special circumstances justifying a variance. It also found that the requested variance would constitute a special privilege and that the extended deck impaired the view from neighboring properties. The city also refunded Lizza $1,827 in fees.

5.    *Trial Court Proceedings*

Lizza filed a petition for writ of administrative mandamus against the city in January 2012 challenging the denial of a variance. He argued that the city manager in approving the encroachment permit in April 2009 also approved the construction of the upper deck. He also argued that the city never informed him that he required a variance until approximately 18 months later. He argued that the city should be equitably estopped from denying a variance; that he had acquired a vested right in the deck; that strict enforcement of the zoning ordinance would cause him unnecessary hardship; and that if he were required to reconstruct the deck the city should pay his construction costs.

The trial court denied the petition in an order filed on May 7, 2013, after a hearing on the merits. The court stated that Lizza forfeited the argument that the city was equitably estopped from denying a variance by failing to raise the issue at the administrative level. The court also addressed the merits of equitable estoppel, stating that the evidence in the administrative record showed that Lizza did not reasonably rely on the building permit in extending the deck. The court explained that the building

permit did not authorize such an extension and that the city notified Lizza before he applied for an encroachment permit that a variance was also required.

The trial court also concluded that neither the building permit nor the encroachment permit authorized the deck extension and that neither permit created a vested right in the deck extension. The court stated further that in denying a variance the city did not deprive Lizza of a privilege enjoyed by other property owners, that granting a variance would confer a special privilege on Lizza, that the deck extension impaired the view from neighboring properties and allowed him to see inside his neighbors' home, and that granting a variance would not promote public health, safety, and general welfare. The court stated that any hardship to be borne by Lizza was self-inflicted as a result of failing to follow the approved plans, that the $1,500 cost to correct the upper deck was relatively small, and that Lizza had shown no unnecessary hardship.

The trial court entered a judgment on May 20, 2013, denying the petition. Lizza timely appealed the judgment.[4]

## CONTENTIONS

Lizza contends (1) the city should be equitably estopped from denying a variance; (2) he is entitled to a variance based on laches; and (3) the variance is de minimis, would not offend public policy, and therefore should be granted.

## DISCUSSION

### 1. *Administrative Mandamus Standard of Review*

Code of Civil Procedure section 1094.5 governs judicial review of a final decision by an administrative agency if the law required a hearing, the taking of evidence, and the discretionary determination of facts by the agency. (*Id.*, subd. (a).) The petitioner must show that the agency acted without or in excess of jurisdiction, failed to afford a fair trial, or prejudicially abused its discretion. (*Id.*, subd. (b).) An

---

[4] We construe the notice of appeal from the order denying the petition as an appeal from the judgment previously entered. (Cal. Rules of Court, rule 8.100(a)(2) ["The notice of appeal must be liberally construed"].)

7

abuse of discretion is shown if the agency failed to proceed in the manner required by law, the decision is not supported by the findings, or the findings are not supported by the evidence. (*Ibid.*)

The trial court in an administrative mandamus proceeding exercises its independent judgment on the evidence only if the administrative decision substantially affects a fundamental vested right. (Code Civ. Proc., § 1094.5, subd. (c) ["Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence"]; *Bixby v. Pierno* (1971) 4 Cal.3d 130, 143.) In all other cases, the court reviews the agency's factual findings under the substantial evidence test. (Code Civ. Proc., § 1094.5, subd. (c) ["In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record"]; *Bixby*, *supra*, at p. 144.)[5]

"Substantial evidence is evidence that a rational trier of fact could find to be reasonable, credible, and of solid value. We view the evidence in the light most favorable to the judgment and accept as true all evidence tending to support the judgment, including all facts that reasonably can be deduced from the evidence. The evidence is sufficient to support a factual finding only if an examination of the entire record viewed in this light discloses substantial evidence to support the finding. (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; *Mealy v. B-Mobile, Inc.* (2011) 195 Cal.App.4th 1218, 1223 [124 Cal.Rptr.3d 804].)" (*Pedro v. City of Los Angeles* (2014) 229 Cal.App.4th 87, 99.)

---

[5]    Lizza's application for a variance from the setback requirement did not involve a fundamental vested right. (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 510 & fn. 1 [held that a variance for a mobile home park did not involve a fundamental vested right]; *Eskeland v. City of Del Mar* (2014) 224 Cal.App.4th 936, 942, fn. 6 [held that a variance from a front setback requirement did not involve a fundamental vested right].)

8

Thus, a trial court in an administrative mandamus proceeding not involving a fundamental vested right does not act as a trier of fact. Instead, the court reviews the administrative record to determine whether substantial evidence in the record supports the agency's factual findings. The court also determines whether the findings support the agency's decision and whether the agency committed any legal error. (Code Civ. Proc., § 1094.5, subd. (b); *Bixby v. Pierno*, *supra*, 4 Cal.3d at p. 144.) An appellate court in a case not involving a fundamental vested right reviews the administrative agency's decision, rather than the trial court's decision, applying the same standard of review applicable in the trial court. (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 427; *Antelope Valley Press v. Poizner* (2008) 162 Cal.App.4th 839, 851-852.)

2. *Lizza Is Not Entitled to a Variance Based on Equitable Estoppel*

a. *Legal Framework*

" '[T]he doctrine of equitable estoppel is founded on concepts of equity and fair dealing.' [Citation.] 'The essence of an estoppel is that the party to be estopped has by false language or conduct "led another to do that which he [or she] would not otherwise have done and as a result thereof that he [or she] has suffered injury." [Citation.]' [Citation.] The doctrine 'ordinarily will not apply against a governmental body except in unusual instances when necessary to avoid grave injustice and when the result will not defeat a strong public policy. [Citations.]' [Citation.]" (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1315.)

"The government may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to such an estoppel against a private party are present and, in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." (*City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 496-497 (*Mansell*).)

Particularly in the land use context, "[c]ourts have severely limited the application of estoppel in this context by expressly balancing the injustice done to the

9

private person with the public policy that would be supervened by invoking estoppel to grant development rights outside of the normal planning and review process. [Citation.] The overriding concern 'is that public policy may be adversely affected by the creation of precedent where estoppel can too easily replace the legally established substantive and procedural requirements for obtaining permits.' [Citation.] Accordingly, estoppel can be invoked in the land use context in only 'the most extraordinary case where the injustice is great and the precedent set by the estoppel is narrow.' [Citation.]" (*Toigo v. Town of Ross* (1998) 70 Cal.App.4th 309, 321.)

The elements of equitable estoppel are "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citation.]" (*Strong v. County of Santa Cruz* (1975) 15 Cal.3d 720, 725.) The detrimental reliance must be reasonable. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 35; *Windsor Pacific LLC v. Samwood Co., Inc.* (2013) 213 Cal.App.4th 263, 271-272.) If these elements are satisfied in a case involving equitable estoppel against the government, the court must weigh the policy concerns to determine whether the avoidance of injustice in the particular case justifies any adverse impact on the public interest. (*Mansell, supra*, 3 Cal.3d at pp. 496-497; *J. H. McKnight Ranch, Inc. v. Franchise Tax Bd.* (2003) 110 Cal.App.4th 978, 991.)

The existence of equitable estoppel generally is a factual question for the trier of fact to decide, unless the facts are undisputed and can support only one reasonable conclusion as a matter of law. (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 319; *Albers v. County of Los Angeles* (1965) 62 Cal.2d 250, 266.) We review factual findings regarding the existence of equitable estoppel under the substantial evidence test. (*Hopkins v. Kedzierski* (2014) 225 Cal.App.4th 736, 756.) In a case involving equitable estoppel against the government, the existence of estoppel is in part a legal question to the extent that it involves a weighing of policy concerns to determine whether the avoidance of injustice in the particular case justifies any adverse impact on

10

the public interest.  (*Lentz v. McMahon* (1989) 49 Cal.3d 393, 403; *Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1360.)  We review questions of law de novo.  (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 801; *SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 461.)

> b.  *Substantial Evidence Supports the City Council's Finding of No Equitable Estoppel*

Zeller stated at the city council hearing that he asked the city whether anything else was needed for the deck extension apart from an encroachment permit and was told that the answer was no.  He stated that in completing the deck he relied on this statement and on the city's failure to assert the variance requirement upon issuing an encroachment permit.  We view Lizza's appeal to the city council as based on the doctrine of equitable estoppel in this regard despite his failure to expressly invoke the doctrine by name.  The city council, by upholding the planning commission's decision denying a variance, impliedly found that equitable estoppel was inapplicable.

The California Supreme Court in *Lentz v. McMahon, supra,* 49 Cal.3d at pp. 402-404, held that the Department of Social Services could determine whether equitable estoppel applied, and that determination was not exclusively reserved for a judicial proceeding.  *Lentz* examined the statutory scheme governing hearings before the department, noting that the statutes required the department to construe the law " 'fairly and equitably' " (italics omitted) and did not limit the issues to be considered in administrative hearings.  (*Id.* at pp. 402-403.)  *Lentz* also noted that administrative mandamus was the exclusive means for judicial review of the department's decision.  (*Id.* at p. 403.)  *Lentz* concluded that the Legislature intended that all potential issues affecting claims for public benefits be raised in the administrative hearing, including claims of equitable estoppel.  (*Id.* at pp. 403-404; see also *Pittsburg Unified School Dist. v. Commission on Professional Competence* (1983) 146 Cal.App.3d 964, 980 [held that the failure to assert equitable estoppel in an administrative proceeding constituted a failure to exhaust administrative remedies].)

11

Lizza does not argue and has not shown that the city council had no authority to determine whether equitable estoppel applied. We presume that the city council had such authority.

We review the city council's factual findings under the substantial evidence test. (*Hopkins v. Kedzierski, supra*, 225 Cal.App.4th at p. 756.) Zeller stated at the planning commission hearing that the city told him at the time that he applied for an encroachment permit that a variance may or may not be required. He stated that when he later obtained the encroachment permit a city official told him that there was nothing else that he needed to do. But there is no evidence that Zeller and a city official specifically discussed a variance at that time or that Zeller was expressly told that no variance was required. We conclude that the evidence in the administrative record supports the implied finding that Lizza did not reasonably rely on any statement by the city that no variance was required.

The evidence also supports the implied finding that Lizza suffered no injury. The city council apparently decided that because the city had issued an encroachment permit and allowed the construction to proceed without a variance, the city was partly at fault. It therefore decided to refund Lizza's variance application and appeal fees, totaling $1,827, while denying a variance. Zeller stated that the cost to restore the deck to its original size would be approximately $1,500, which is less than the amount of fees refunded. The result is that the city will bear the entire reconstruction cost, and Lizza will incur no monetary loss as a result of completing the deck extension rather than building the deck in conformity with the building permit.

Accordingly, we conclude that substantial evidence supports the city council's determination that equitable estoppel is inapplicable. Lizza has shown no abuse of discretion in this regard.

3.      *Lizza Is Not Entitled to a Variance Based on Laches*

Lizza also contends he is entitled to a variance based on laches. He argues that the city unreasonably delayed informing him that a variance was required. He acknowledges that he failed to assert this argument in the trial court, but argues that he

12

raised the issue at the city council hearing. He cites Zeller's statement that the city did not attempt to contact Lizza to inform him of the variance requirement until approximately 18 months after the project was completed.**6**

"[L]aches is an equitable defense to the enforcement of a stale claim and requires a showing of unreasonable delay plus either the plaintiff's acquiescence in the act complained of or prejudice to the defendant resulting from the delay. (*Conti v. Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 359 [82 Cal.Rptr. 337, 461 P.2d 617].) The doctrine of laches may be asserted only in a suit in equity. [Citation.]" (*People v. Koontz* (2002) 27 Cal.4th 1041, 1088.) We generally review a ruling on laches under the substantial evidence test. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 67; *Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624.)

Assuming without deciding that Lizza exhausted his administrative remedy by raising the issue of laches before the city council and that his failure to argue the point in the trial court does not preclude him from asserting the appoint on appeal, we conclude that he has shown no abuse of discretion by the city in failing to grant him a variance based on laches. Substantial evidence supports the implied findings that the 17-month period was not an unreasonable delay in these circumstances, that the city never acquiesced in the deck extension, and that Lizza suffered no prejudice resulting from the delay because the refunded fees exceed the cost of reconstruction.

Moreover, Lizza cites no authority for the proposition that the equitable defense of laches can be asserted offensively as a basis for affirmative relief. Laches may be used only as a shield and not as a sword; it may be asserted as a defense, but cannot be invoked as a basis for affirmative relief. (See 30A C.J.S. (2014) Equity, § 138, p. 429 ["The doctrine of laches cannot be used as a means to obtain affirmative relief"]; *LaPrade v. Rosinsky* (D.C. 2005) 882 A.2d 192, 198 ["Laches may be used as a shield, but not as a sword by one seeking affirmative relief"]; *Corona Properties of Fla. v.*

---

**6** The record shows that the city sent a letter to Lizza at the same post office box provided in his encroachment permit application on September 3, 2010, approximately 17 months after issuance of the encroachment permit in April 2009.

13

*Monroe Cty.* (Fla.App. 1986) 485 So.2d 1314, 1318; cf. *Lackner v. LaCroix* (1979) 25 Cal.3d 747, 752 [stating that the statute of limitations can be used only as a shield and not as a sword].)

    4.    *Lizza Is Not Entitled to a Variance*

Lizza also contends the variance is de minimis, would not offend public policy, and therefore should be granted. He cites cases from other states purportedly supporting the proposition that a variance may be granted despite the failure to satisfy the requirements of the zoning ordinance if the variance is minor and strict compliance with the ordinance is not necessary to protect the public policy concerns underlying the ordinance. We need not decide whether this is the law in California or whether Lizza exhausted his administrative remedy by raising this issue before the city council. Lizza has not shown that the variance was so minor and the impact on his neighbors so slight as to compel the conclusion that there was no substantial evidence to support the denial of a variance. He therefore has shown no abuse of discretion by the city in this regard.

### DISPOSITION

The judgment is affirmed. The city is entitled to recover its costs on appeal.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

                                                  KITCHING, J.

WE CONCUR:

EDMON, P. J.                                    ALDRICH, J.