HENDRY, Judge.
Plaintiff Corona Properties of Florida, Inc. (Corona Properties) appeals a final judgment finding a building permit issued to it by the defendant Monroe County to be void.
The relevant facts may be briefly stated. Appellant Corona Properties is the owner of a parcel of property located on Key Largo in unincorporated Monroe County. The property is zoned RU-3. Prior to 1979, this zoning category permitted the development of 58 dwelling units on the property. In 1974, Monroe County issued a building permit for a 58-unit building to be constructed on the subject property. The then-owner had pilings driven, but no further improvements were made and the project was abandoned. In 1979, section *1316 19-197 of the Monroe County Code was amended to reduce the number of dwelling units allowed within the RU-3 classification. This amendment decreased the number of dwelling units permitted on the property to approximately 24.
In 1981, Michael Halpern, a representative of the then-owner, requested a determination from Monroe County as to whether the project as originally approved could be completed in light of the 1979 amendment to the RU-3 category. On May 8, 1981, the Monroe County Zoning Official, Henry F. Weinkam, wrote Mr. Halpern assuring him that the owner had “vested rights in and to said project,” to construct a 58-unit building on the site.[1]
Shortly thereafter, the then-owner filed an application to construct a 40-unit building on the property. The county gave the owner a second building permit on September 21, 1981. This second permit was issued solely on the basis of the vested rights letter. The project was then abandoned for a second time, without further significant construction and the permit expired for lack of use.
The property was sold to Corona Properties in 1982. In 1983, Corona Properties applied for a permit to construct the same 40 units which had been authorized under the 1981 permit. Monroe County issued a building permit to Corona Properties on October 7, 1983, again, on the basis of the vested rights letter. In turn, the county received a permit fee from Corona Properties of approximately $45,000. Corona Properties obtained an extension on the permit in November, 1983 and received a second extension in January, 1984.
On April 30, 1984, Jeffrey Doyle, the present Monroe County Zoning Official, and Kermit Lewin, the Monroe County Administrator, wrote to Mr. Halpern informing him that the prior zoning official had been in error when he had issued the vested rights letter. Mr. Doyle and Mr. Lewin advised that it was their intention to have Corona Properties’ permit cancelled and its permit fee returned. On June 1, 1984, the Monroe County Commission voted to cancel the building permit and to refund the permit fee. When Corona Properties received the refund check, it returned it to the county. At the time of the permit’s revocation, Corona Properties had spent roughly $82,-000 on the project. The only physical work done on the site, however, was a minimal restructuring of frames for footers.
Corona Properties filed suit against Monroe County seeking a declaration of rights with regard to the 1983 building permit, as well as injunctive relief and damages. The trial court entered a final judgment denying Corona Properties’ requested relief, finding that the permit was void ab initio and ordering the return of the permit fee.
The issues presented for our consideration are: (1) whether the Monroe County Zoning Official had the authority to issue a vested rights letter; (2) whether Monroe County may be equitably estopped from revoking Corona Properties’ building permit; and (3) whether Monroe County may be barred by laches from revoking Corona Properties’ building permit.
The Monroe County Code sections relied upon by Corona Properties as establishing the zoning official’s authority to issue a vested rights letter are sections 19-22(b) and 19-132. Section 19-22(b) sets forth the zoning official’s duties:
(1) To serve as secretary to the zoning board.
(2) To serve as secretary to the board of adjustment.
(3) To receive and review all requests for zoning and use clearance prior to the issuance of any building permit or certificate of occupancy for an individual use.
(4) Refer all requests for zoning and use clearance to the zoning board for action where there is, in the zoning official’s opinion, a reasonable doubt as to the likelihood of the proposed use conforming to the applicable performance standards of this chapter. (See section 19-131 of this chapter, which refers to Chapter 403 of the Florida Statutes.)
*1317 (5) To be responsible for general administration and enforcement of the zoning ordinance.
Section 19-132 provides:
Permits for either the construction of buildings or for the use of land or buildings which have been issued prior to the adoption of Ordinance No. 1-1973 and which are in violation of this ordinance shall be declared null and void unless evidence is shown to establish that substantial expenditures have been made either for the preparation of plans for construction or for preliminary planning. Investment in real property shall not be construed as an expenditure towards construction. Unless actual construction work, including grading and excavation, is underway within sixty (60) days after the adoption of Ordinance No. 1-1973, such permit shall become null and void.
Neither section 19 — 22(b), nor section 19-132 grants the Monroe County Zoning Official the authority to make a vested rights determination. The general language of section 19 — 22(b) does not support a grant of authority to the zoning official to exempt a project from the zoning ordinance. Section 19-132 applies only to permits issued prior to the March 3, 1973 adoption date of Ordinance No. 1-1973. Subsequent amendments to Ordinance No. 1-1973 do not, as Corona Properties argues, establish new adoption dates for the ordinance, triggering a section 19-132 review of any pending building permits. Amendments by implication are not favored and will not be upheld in doubtful cases. State ex rel. Quigley v. Quigley, 463 So.2d 224 (Fla.1985); State v. J.R.M., 388 So.2d 1227 (Fla.1980); Miami Water Works Local No. 654 v. City of Miami, 157 Fla. 445, 26 So.2d 194 (1946).
Since neither section grants the Monroe County Zoning Official the authority to determine when a property owner’s rights have vested, the vested rights letter and the 1983 permit issued pursuant to such letter are ultra vires and void ab initio. See Edwards v. Town of Lantana, 77 So.2d 245 (Fla.1955); Abenkay Realty Corp. v. Dade County, 185 So.2d 777 (Fla.3d DCA), appeal dismissed, 192 So.2d 495 (Fla.1966).
Second, we are asked to decide whether Monroe County may be equitably estopped from revoking Corona Properties’ building permit. Ordinarily, a governmental entity may not be estopped from the enforcement of its ordinances by an illegally issued permit. Dade County v. Gayer, 388 So.2d 1292 (Fla. 3d DCA 1980), review denied, 397 So.2d 777 (Fla.1981); Dade County v. Bengis Associates, Inc., 257 So.2d 291 (Fla. 3d DCA), cert. denied, 261 So.2d 839 (Fla.1972); City of Miami Beach v. Meiselman, 216 So.2d 774 (Fla. 3d DCA 1968), cert. denied, 225 So.2d 533 (Fla.1969). In ruling that estoppel may not be asserted against a county for a permit issued in error, this court stated:
[w]hile at first blush it seems that the application of the rule may be harsh, it would be inconceivable that public officials could issue a permit, either inadvertently, through error, or intentionally, by design, which would sanction a violation of an ordinance adopted by the legislative branch of government. Only the duly constituted members of the Metropolitan Dade County Commission enjoy that prerogative and then only in accordance with established procedure.
Dade County v. Gayer, 388 So.2d at 1294.
In the instant case, the vested rights letter and Corona Properties’ building permit were illegally issued, therefore, estoppel may not be asserted against the county for the revocation of the building permit.[2]
The third issue for our consideration is whether Monroe County may be barred by laches from revoking Corona Properties’ building permit. Laches is an *1318 affirmative defense. Van Meter v. Kelsey, 91 So.2d 327 (Fla.1956); Smith v. Town of Bithlo, 344 So.2d 1288 (Fla. 4th DCA 1977), cert. denied, 355 So.2d 517 (Fla.1978); Niagara Fire Insurance Co. v. Allied Electrical Co., 319 So.2d 594 (Fla. 3d DCA), cert. dismissed, 322 So.2d 925 (Fla.1975); Tower v. Moskowitz, 262 So.2d 276 (Fla. 3d DCA), cert. denied, 268 So.2d 906 (Fla.1972). Laches bars relief claimed by plaintiff where there is conduct on the part of the defendant, or one under whom he claims, giving rise to the situation of which complaint is made; the plaintiff, having had notice of the defendant’s conduct, and having the opportunity to bring suit, is guilty of delay in asserting his rights by suit; there is a lack of knowledge on the part of the defendant that the plaintiff will assert the right on which he bases his suit; and injury or prejudice to the defendant would result in the event the suit is not held to be barred, or in the event relief is afforded to the plaintiff. Van Meter v. Kelsey, 91 So.2d at 330-31; Niagara Fire Insurance Co. v. Allied Electrical Co., 319 So.2d at 595-96; Tower v. Moskowitz, 262 So.2d at 279-80. The doctrine of laches is to actions in equity what statutes of limitations are to actions in law. Steketee v. Ballance Homes, Inc., 376 So.2d 873 (Fla. 2d DCA 1979), cert. denied, 385 So.2d 754 (Fla.1980); Shew v. Kirby, 135 So.2d 770 (Fla. 2d DCA 1961); see Wall v. Johnson, 78 So.2d 371 (Fla.1955); Jefferies v. Corwin, 363 So.2d 600 (Fla. 4th DCA 1978); Tower v. Moskowitz, 262 So.2d at 279. Laches acts as a shield to an action, therefore, it has no application to the case at bar where appellant Corona Properties is seeking to use it as a sword.
For the foregoing reasons and based upon the authorities cited, the final judgment of the trial court is affirmed.
Affirmed.

. The letter also contained the signature of the County Attorney, Michael H. Cates.

. Monroe County concedes that had the facts been more egregious, equitable estoppel could have been validly asserted against it. See Fraga v. Dept. of Health & Rehabilitative Services, 464 So.2d 144, 147 (Fla. 3d DCA), review denied, 475 So.2d 694 (Fla.1985) (the state’s "acts of callous non-responsiveness, longstanding and unpro-testing payment, and affirmative misleading" es-topped it from recovering Medicaid over-payments made to psychiatrist).