Filed 8/22/17

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re the Marriage of MATTHEW ALBERT and MARY KATHERINE PARKER. | |
| MATTHEW ALBERT PARKER, <br><br>         Appellant, <br><br> v. <br><br> MARY KATHERINE PARKER et al., <br><br>         Respondents. | E064236 <br><br> (Super.Ct.No. SFLSS80842) <br><br> OPINION |

APPEAL from the Superior Court of San Bernardino County. Diane I. Anderson, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.) Affirmed.

Law Offices of Aaron M. Hudson and Daniel W. Rinaldelli for Appellant.

No appearance by Respondent Mary Katherine Parker.

Kamala D. Harris and Xavier Becerra, Attorneys General, Julie Weng-Gutierrez, Assistant Attorney General, Linda M. Gonzalez, Catherine A. Ongiri and Niromi W.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part B(1).

Pfeiffer, Deputy Attorneys General, for Respondent County of San Bernardino Department of Child Support Services.

In 1990, the family court entered a judgment of dissolution of marriage for appellant Matthew Albert Parker and respondent Mary Katherine Parker. Mary[1] and Matthew shared two children. In 2014, Matthew sought an order (1) requiring respondent San Bernardino County Department of Child Support Services (the Department) to prepare an accounting of the child support arrears owed by Matthew; and (2) discharging the child support arrears for the period in which the children resided with Matthew (*Trainotti*[2] credits). The family court denied Matthew's requested order.

Matthew raises two issues on appeal. First, Matthew contends res judicata and collateral estoppel do not bar an award of *Trainotti* credits. Second, Matthew asserts the family court erred by not applying the doctrine of laches to discharge the arrears owed to the Department. We affirm the judgment.

## A. FACTUAL AND PROCEDURAL HISTORY

### 1. 1990 DISSOLUTION

Mary and Matthew's two children were born in 1987 and 1988. In 1990, the family court entered an order for the dissolution of Mary and Matthew's marriage and ordered Mary and Matthew to share joint legal custody of the children. The court awarded Mary primary physical custody of the children. The court ordered that

---

[1] We use first names for the sake of clarity. No disrespect is intended.

[2] *In re Marriage of Trainotti* (1989) 212 Cal.App.3d 1072 (*Trainotti*).

Matthew would have physical custody of the children "during reasonable times and for reasonable periods," which included three weekends per month. The exchange of the children for visitation was to occur at a public parking area adjacent to the San Bernardino County Sheriff's Station. Matthew was ordered to pay child support in the amount of $137 per child, per month—a total of $274 per month.

The family court ordered Mary and Matthew (1) not to remove the children "from the seven southernmost counties of the State of California without prior written consent of the other party, or prior order of the court"; and (2) to notify one another in writing, within 72 hours, of any changes to his/her address and/or telephone number.

### 2. 2007 REQUEST FOR JUDICIAL DETERMINATION OF ARREARAGES

In August 2007, Matthew filed a request for a judicial determination of arrearages. Matthew asserted the Department sought $83,629.58 in child support arrears from Matthew. Matthew declared the children resided with him from February 1993 until the children reached age 18, and he received no child support from Mary. Matthew asserted that because he was the sole provider for the children for the majority of their lives, the family court should find Matthew did not owe child support arrears. Matthew attached a variety of documents to his request, such as the children's school and medical records

The Department responded to Matthew's request. The Department conceded that, pursuant to *Trainotti*, Matthew would not owe child support for the period in which the children were residing with Matthew.

3

In October 2007, the family court held a hearing on Matthew's request. At the hearing, Matthew explained that he took custody of the children after Mary called Matthew's parents and said Matthew could take the children. Mary and the children were residing in Texas. Matthew was residing in Oregon. Matthew borrowed money from his parents for airfare. Matthew flew to Texas and retrieved the children. Matthew told Mary he was taking the children to Oregon. Matthew and Mary did not discuss the cost of airfare. Matthew and the children flew to Oregon. The children resided with Matthew from that point onward.

Mary explained that, when she moved to Texas, she did not know Matthew's contact information. Mary went to Matthew's house in California, but he had moved. When Mary was unpacking in Texas, she found Matthew's parents' contact information and telephoned them to provide them with her new contact information in Texas. When Matthew arrived in Texas to take the children to Oregon, Mary believed they were going for a month-long visit to Matthew's parents' home in Canada. Mary did not know Matthew lived in Oregon. Mary permitted Matthew to take the children on the condition the children would return in early March.

When Matthew did not return the children in March, Mary contacted Matthew's parents. Matthew's parents told Mary "not to call there anymore." Mary "filed a Foreign Judgment in August of [19]94." However, because Mary did not know where Matthew was located, she was unable to pursue any further action.

Matthew responded that, when he took the children, it was for a visit of undetermined length. Matthew explained that, at some point, Mary telephoned Matthew

4

in Oregon and asked him if he planned to return the children to Texas. Matthew told Mary he borrowed money for the cost of traveling to Texas and then back to Oregon when he retrieved the children, so Matthew could not afford to return the children to Texas. Matthew offered to return the children to Texas if Mary would contribute to the cost of transportation. Mary never contacted Matthew again.

Mary said she did not recall having a telephone conversation with Matthew after Matthew took the children. Mary said she did not contact the court about regaining physical custody of the children because she had tried to work with other agencies. Mary explained she had contacted "America's Most Wanted" about the case.

The family court said, "[T]he pleading is one to Determine Arrears, but I see it's more in the nature of *Trainotti* Credits. So that's how I'm going to address the ruling." The family court found Matthew "extorted these children and kept them from [Mary] even though she had been the parent granted custody. He conditioned the return on her paying for the travel expenses which was not something that was discussed nor is a condition of the judgment." The court said, "For those reasons, this motion which is being treated as a Motion for *Trainotti* Credit is denied. There will be no *Trainotti* Credits in this matter." The family court explained Matthew "wrongfully kept these children from [Mary]," and Matthew was required to pay the child support arrears.

3.    2014 REQUEST FOR *TRAINOTTI* CREDITS

In December 2014, Matthew filed a request for an order (1) requiring the Department to prepare an accounting of the child support arrears owed by Matthew; and (2) awarding Matthew *Trainotti* credits. In a declaration attached to the request,

5

Matthew asserted Mary was dishonest at the 2007 hearing. Matthew declared he obtained evidence to support a finding Mary knew, as early as 1991, that Matthew resided in Oregon. Matthew attached envelopes addressed to Matthew in Oregon with postmarks of 1991, 1992, and 1993. The envelopes either lacked a return address or gave Matthew's address as the return address. Matthew also attached letters, written by "Kathi." Matthew declared the letters were from Mary. One letter is dated "December 27, 199"—the final digit is not visible. A second letter is dated February 13, 1992.

Matthew provided points and authorities in support of his request. First, Matthew asserted Mary should no longer receive child support payments because Mary had unclean hands due to her deceit at the 2007 hearing. Second, Matthew contended laches barred the Department from collecting the arrears. Matthew asserted the Department did not attempt to collect the support payments from 1991 through 2007. Matthew contended it was unjust for the Department to collect a debt after 16 years of failing to act.

Third, Matthew, asserted "the determination of true *Trainotti* credits was not made" because Mary "committed fraud on the court." In support of this assertion, Matthew cited a statute authorizing exemplary damages when a defendant is guilty of oppression or fraud. (Civ. Code, § 3294, subd. (a).)

Mary responded via a declaration. In the declaration, Mary pointed out various alleged inconsistencies in Matthew's prior statements. The Department responded with points and authorities. The Department asserted res judicata barred an award of *Trainotti* credits because, in 2007, the family court denied Matthew's request for

6

*Trainotti* credits. The Department asserted the family court, in 2007, determined the veracity of Mary's statements, so that issue had already been decided. Alternatively, the Department contended Matthew was not diligent in seeking relief from the 2007 order.

Further, the Department asserted Matthew had unclean hands because he wrongfully took the children to Oregon. Next, the Department contended laches did not apply because (1) most of the arrears were owed to Mary, not the Department; and (2) the Department had been trying to collect arrears from Matthew since 2008.

On May 27, 2015, the family court held a hearing on Matthew's request. At the hearing, the Department asserted (1) Matthew had unclean hands, due to wrongfully taking the children, and therefore did not qualify for equitable relief; (2) the issues of *Trainotti* credits and veracity were res judicata to the 2007 ruling; and (3) Matthew was not diligent in seeking relief. In regard to diligence, the Department asserted Matthew failed, in 2007, to file a petition for reconsideration, to seek to set aside the findings, and/or appeal.

Matthew asserted that, if Mary believed Matthew kidnapped the children, she should have contacted law enforcement, which she did not do, and she did not return to the courts. Matthew asserted Mary did not want the children returned to her, hence, her lack of communication. Matthew explained that he did not file an appeal or motion for reconsideration in 2007 because he was self-represented, the filings are difficult, and he lacked money. Matthew explained that he was seeking equitable relief based upon the fact that the children resided with Matthew, and Mary did not pay any child support.

The court denied Matthew's request for *Trainotti* credits, finding an award was barred by res judicata due to the 2007 ruling. The court found laches did not apply to the arrears owed to the Department because the Department had been making efforts to collect from Matthew since 2008.

**B.    DISCUSSION**

1.    *TRAINOTTI* CREDITS

Matthew contends the family court erred by denying his request for *Trainotti* credits.

"The doctrine of collateral estoppel is one aspect of the concept of res judicata." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341, fn. 3 (*Lucido*).) "Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.' " (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.) " 'The doctrines of res judicata and collateral estoppel will, when they apply, serve to bar relitigation of a factual dispute even in those instances where the factual dispute was erroneously decided in favor of a party who did not testify truthfully.' " (*Western Mutual Ins. Co. v. Yamamoto* (1994) 29 Cal.App.4th 1474, 1485.)

Collateral estoppel has five requirements: "First, the issue sought to be precluded from religitation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former

8

proceeding." (*Lucido*, *supra*, 51 Cal.3d at p. 341.) We apply the de novo standard of review. (*Johnson v. GlaxoSmithKline, Inc.* (2008) 166 Cal.App.4th 1497, 1507.)

We examine if the former and current issues are identical. "The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings." (*Lucido*, *supra*, 51 Cal.3d at p. 342.) In 2007, Matthew requested the family court find he did not owe child support because he had been the children's sole provider since February 1993. The family court explained that Matthew was requesting *Trainotti* credits, and ruled upon the request as one for *Trainotti* credits. In 2014, Matthew requested the family court "give *Trainotti* credits to [Matthew] for custody of the minor children from 1993 to age of majority." The 2007 and 2014 cases concerned *Trainotti* credits from 1993 through the children reaching age 18 based upon Matthew being the children's sole provider. Because both proceedings concerned whether Matthew was entitled to *Trainotti* credits, due to being the children's sole provider, we conclude the issues are identical.

Second, we examine if the issue was actually litigated in the 2007 proceeding. An issue is actually litigated when the parties have an opportunity to present their full case. (*Lucido*, *supra*, 51 Cal.3d at p. 341.)

In *Trainotti*, the appellate court held that child support orders "are an exercise of the court's equitable power and . . . a trial court possesses the discretion to permit only partial enforcement or to quash, in toto, a writ of execution directed against a parent in arrearage who, during the period in question, has had the sole physical custody of the child." (*Trainotti*, *supra*, 212 Cal.App.3d at pp. 1074-1075.)

9

Unclean hands is an equitable defense. (*Salas v. Sierra Chemical Co.* (2014) 59 Cal.4th 407, 432.) It requires a person seeking equitable relief to have acted fairly in the matter for which he is seeking a remedy. (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 978.) "The doctrine promotes justice by making a plaintiff answer for his own misconduct in the action. It prevents 'a wrongdoer from enjoying the fruits of his transgression.' " (*Ibid.*) "Whether the doctrine of unclean hands applies is a question of fact." (*Ibid.*)

At the 2007 hearing, Matthew explained that he had been the children's sole provider. Matthew provided evidence in the form of the children's school and medical records. Matthew was litigating the issue of *Trainotti* credits—explaining why the family court should grant him equitable relief from the arrearages. The Department conceded Matthew should be awarded *Trainotti* credits for the period in which the children resided with him.

Mary defended by invoking unclean hands—asserting Matthew wrongfully kept the children from Mary. Matthew tried to rebut the defense by asserting (1) he offered to return the children to Mary if she paid for their transportation, and (2) Mary did not follow-up on Matthew's offer. Because Matthew offered evidence on the issue of *Trainotti* credits, Mary and Matthew were heard on the issue of unclean hands, and the Department entered its concession; we conclude the issue was actually litigated.[3]

---

[3] Mary and Matthew were not under oath at the 2007 hearing. However, the lack of oath was not raised in the family court, and therefore is deemed forfeited. (*In re Katrina L.* (1988) 200 Cal.App.3d 1288, 1299.)

Third, we examine if the issue was necessarily decided in the 2007 proceeding. For the issue to be necessarily decided, it must "not have been 'entirely unnecessary' to the judgment." (*Lucido*, *supra*, 51 Cal.3d at p. 342.) In the 2007 proceeding, Matthew sought equitable relief, which the Department and family court interpreted as a request for *Trainotti* credits. Mary invoked the defense of unclean hands. Because *Trainotti* credits and unclean hands were the focus of the 2007 proceeding, the family court necessarily had to resolve those issues in order to reach its decision. Accordingly, the issue was necessarily decided in the 2007 proceeding.

Fourth, we analyze whether the 2007 decision is final and on the merits. A decision is final when it is "free from direct attack." (*Lucido*, *supra*, 51 Cal.3d at p. 342.) Matthew did not appeal the 2007 order denying his request. Matthew did not seek to have the order set aside or reconsidered. Given that 10 years have passed since the order was entered, we conclude it is final. The decision was on the merits because the family court decided the matter based upon the substantive issue of the unclean hands defense, i.e., that Matthew's conduct was wrongful. The matter was not dismissed for a procedural reason. Therefore, we conclude the 2007 decision is final and on the merits.

Fifth, we examine if the same parties are involved. The 2007 proceeding involved Matthew, Mary, and the Department. The 2014 proceeding involved Matthew, Mary, and the Department. Therefore, we conclude the same parties are involved.

In sum, all the requirements for collateral estoppel have been met. In 2007, the family court heard from Mary, Matthew, and the Department on the issue of *Trainotti*

11

credits and unclean hands. The family court necessarily decided the issue, and its decision is final and on the merits.

In 2007, the family court denied Matthew's request for equitable relief from the child support arrearages because Matthew acted wrongfully in withholding the children from Mary. In other words, the family court found Matthew was not entitled to equitable relief because he had unclean hands. In 2014, Matthew sought equitable relief from the child support arrearages. This matter had already been determined. Matthew was not entitled to equitable relief from the child support arrearages because Matthew had unclean hands due to wrongfully withholding the children from Mary. Accordingly, the family court did not err by denying Matthew's 2014 request for *Trainotti* credits.

Matthew contends collateral estoppel does not apply because he did not use the term "*Trainotti* credits" in his 2007 filing. In Matthew's 2007 request, he sought the discharge of his child support arrears due to being the children's sole provider. Matthew may not have used the term "*Trainotti* credits," but he effectively requested the type of relief described in *Trainotti*. (*Trainotti*, *supra*, 212 Cal.App.3d at pp. 1075-1076.) Therefore, we are not persuaded that Matthew did not request *Trainotti* credits.

Matthew contends the issue was not fully litigated because he was not given an opportunity to cross-examine Mary during the 2007 hearing. Matthew did not request to cross-examine Mary; therefore, the family court did not deny Matthew an opportunity to cross-examine Mary. (See *Lucido*, *supra*, 51 Cal.3d at p. 341 [issue was fully litigated because parties presented evidence and "had the opportunity to present full

12

cases"].)  Because Matthew did not request to cross-examine Mary we are not persuaded that he was denied an opportunity to fully present his case.  (*In re Katrina L.*, *supra*, 200 Cal.App.3d at p. 1299.)

Matthew asserts the issue was not fully litigated in 2007 because the family court did not permit his current wife (Wife) to testify.  In 2007, Matthew told the family court that he spoke to Mary on the telephone and offered to return the children to her if she contributed to the cost of transportation.  Mary did not recall the telephone call.  The court asked Matthew what, if anything, Mary said in response to Matthew's offer.  Matthew said he could not recall because the conversation "was almost 20 years ago."  Matthew said Wife heard the telephone conversation.  Matthew remarked that Wife was sitting next to Matthew during the 2007 hearing.

The family court believed Matthew's statements about the telephone conversation.  It was because of Matthew's statements that the court concluded Matthew acted wrongfully.  The family court found Matthew improperly "conditioned the return [of the children] on [Mary] paying for the travel expenses," which amounted to Matthew "extorting" Mary.  The family court's finding was based solely on Matthew's statement about the telephone call.  On appeal, Matthew does not assert that Wife would have contradicted Matthew's version of the telephone conversation, had she testified.  (See *Friedland v. Friedland* (1959) 174 Cal.App.2d 874 [appellant failed to make an offer of proof in the appellate court as to how the testimony he sought to have elicited would have helped his case].)

13

Matthew's assertion is unpersuasive for two reasons. First, Matthew did not request to have Wife testify. As a result, we cannot conclude he was denied an opportunity to present his case. Second, Matthew does not contend Wife would have contradicted his version of the telephone call, thereby offering different evidence on the issue. In sum, we are not persuaded that Matthew was denied an opportunity to fully present his case.

Matthew contends the issue was not fully litigated in 2007 because he was not given notice that Mary would raise an unclean hands defense at the hearing. Matthew did not object, during the 2007 hearing, to Mary arguing a defense of unclean hands, and he did not request a continuance. Matthew did not assert a lack of notice or lack of ability to respond to such a defense. Moreover, we note it was Matthew's statement, about Mary needing to send money for transportation costs, that caused the family court to find Matthew acted wrongfully. Thus, it was Matthew's own statement, not a statement by Mary, that caused his request to be denied. Accordingly, we are not persuaded that Matthew was denied an opportunity to fully present his case.

Matthew contends *Trainotti* "is not predicated on principles of equity, but on principles of law." In *Trainotti*, the mother was awarded custody of the son she shared with her former husband. (*Trainotti*, *supra*, 212 Cal.App.3d at p. 1073.) Three years after the award of custody, the son went to live with his father, and his father ceased paying child support. (*Ibid.*) The father sought an order to show cause re: modification of the child custody and support, but the matter was taken off calendar. (*Ibid.*) Approximately six months later, the mother sought to have the father held in contempt

14

for failing to pay child support. (*Id.* at p. 1074.) The trial court found there had been no modification of the support order, and therefore concluded it could not discharge or offset the arrears for the period that the child was residing with the father. The father appealed. (*Ibid.*)

The appellate court reasoned that child support orders "are an exercise of the court's equitable power and . . . a trial court possesses the discretion to permit only partial enforcement or to quash, in toto, a writ of execution directed against a parent in arrearage who, during the period in question, has had the sole physical custody of the child." (*Trainotti*, *supra*, 212 Cal.App.3d at pp. 1074-1075.)

The appellate court concluded that, although a writ of execution was not brought in *Trainotti*, the trial court had the "discretion to determine the appropriate remedy for enforcing the order regardless of the procedural context in which the issue was raised. [Citations.] In so doing, the [trial] court should have considered whether the debtor had satisfied or otherwise discharged the obligation imposed by the original order." (*Id.* at p. 1075.) The appellate court wrote, "We think it clear that the trial court erred by refusing to consider whether [the father] had satisfied his obligation by furnishing [the son], with the approval of [the mother], a home and support that was equal to or in excess of the court-ordered amount." (*Id.* at pp. 1075-1076.)

Our reading of *Trainotti* reflects the power to discharge child support arrearages is based upon the family court's equitable powers. (See *In re Marriage of McClellan* (2005) 130 Cal.App.4th 247, 258 [*Trainotti* is limited to discussing "the court's equitable power"].) We have made this determination in reliance on the portion of the

15

case that provides child support orders "are an exercise of the court's equitable power and . . . a trial court possesses the discretion to permit only partial enforcement or to quash, in toto" an enforcement order/writ.  (*Trainotti*, *supra*, 212 Cal.App.3d at p. 1075.)  Thus, we are not persuaded by Matthew's assertion.

## 2.    LACHES

Matthew contends the family court erred by not applying laches to discharge the arrears Matthew owes to the Department.

"Laches is based on the principle that those who neglect their rights may be barred, in equity, from obtaining relief."  (*City of Oakland v. Oakland Police and Fire Retirement System* (2014) 224 Cal.App.4th 210, 248.)  "The doctrine of laches is to actions in equity what statutes of limitations are to actions in law."  (*Corona Properties of Florida, Inc. v. Monroe County* (Fla. App. 1986) 485 So.2d 1314, 1318.)  "In an action to enforce a judgment for child . . . support, the defendant may raise, and the court may consider, the defense of laches only with respect to any portion of the judgment that is owed to the state."  (Fam. Code, § 291, subd. (d).)

In 2014, Matthew filed a request for an order (1) requiring the Department to prepare an accounting of the child support arrears owed by Matthew; and (2) awarding Matthew *Trainotti* credits.  In Matthew's points and authorities filed in support his request, he argued the arrears owed to the Department should be discharged due to laches.

In the family court, Matthew was the petitioner and sought to use laches offensively, rather than defensively, to have the arrearages discharged.  Matthew relies

16

on Family Code section 291, subdivision (d). Such offensive use of the laches defense is not authorized by Family Code section 291, subdivision (d), which specifically refers to "the *defense* of laches" being available "[i]n an action to *enforce* a judgment for child . . . support." (Italics added.)

Matthew cites no authority for the proposition that the equitable defense of laches can be asserted offensively as a basis for relief. Laches may be used only as a shield, not as a sword. (*LaPrade v. Rosinsky* (D.C. 2005) 882 A.2d 192, 198; *Corona Properties of Florida, Inc. v. Monroe County*, *supra*, 485 So.2d at p. 1318.) Matthew was the party seeking a remedy in the family court, therefore, he cannot assert laches.

To the extent a petitioner can assert the defense of laches to obtain relief, we conclude the family court did not err. "A defendant must demonstrate three elements to successfully assert a laches defense: (1) delay in asserting a right or a claim; (2) the delay was not reasonable or excusable; and (3) prejudice." (*Magic Kitchen LLC v. Good Things Intern. Ltd.* (2007) 153 Cal.App.4th 1144, 1157.) Matthew bore the burden of proving laches applies. (*Highland Springs Conference and Training Center v. City of Banning* (2016) 244 Cal.App.4th 267, 282.) Because the facts are largely undisputed, we will apply the de novo standard of review. (*San Bernardino Valley Audubon Society v. City of Moreno Valley* (1996) 44 Cal.App.4th 593, 605.)

We examine whether the Department delayed in asserting a right or claim. The order for child support was entered in February 1990, when Mary and Matthew divorced. Therefore, the right or claim to child support was immediately exercised. There was no delay in obtaining an order requiring Matthew to pay child support.

17

Mary received public assistance. Because Mary received public assistance, the Department could be reimbursed for the public assistance from Matthew's child support payments. (Former Welf. & Inst. Code, § 11350, subd. (a)(1); *City and County of San Francisco v. Thompson* (1985) 172 Cal.App.3d 652, 659.) The Department was required to enforce the child support order. (Former Welf. & Inst. Code, § 11475.1, subd. (a).)

In October 1991, the Department filed an order to show cause re: contempt (OSC). The Department asserted Matthew owed $3,288 in child support and Mary was receiving public assistance. In January 1992, the OSC was taken off calendar due to Matthew not being served; Matthew was not served because Matthew had moved to Oregon. The Department acted immediately by filing for an OSC; however, it delayed because it failed to serve Matthew. Because one could reasonably find the Department delayed in enforcing the child support order, we will examine the issue of prejudice.

Matthew needed to show he suffered prejudice as a result of the Department's alleged delay. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 67.) We focus on the causation requirement—whether the prejudice resulted from, i.e., was caused by, the Department's alleged inaction. The Department had an interest in the child support payments from Matthew because Mary was receiving public assistance. The Department had the right to collect reimbursement for the public assistance from the child support sent by Matthew. (Welf. & Inst. Code, § 11477, subd. (a)(1)(A); *In re Marriage of Lugo* (1985) 170 Cal.App.3d 427, 436.)

Matthew asserts he suffered prejudice because excessive interest accrued on the arrears. A declaration by Matthew reflects he chose to stop paying child support in August 1990. Because Matthew chose not to pay his court-ordered child support, interest accrued. The accrual of interest is due to Matthew's inaction, not the Department's. Therefore, any interest Matthew must pay is self-imposed. The evidence reflects the interest payments resulted from Matthew's decision to stop making child support payments. Thus, any prejudice did not result from a delay by the Department.

Next, we focus on whether prejudice was shown. The record reflects the Department did not make collection efforts between January 1992 and June 2004—approximately 11.5 years. Matthew brought his laches action approximately 11 years later; raising laches in his points and authorities, which were filed in May 2015.

In Matthew's 2015 points and authorities he wrote, "According [to] the numbers that the county provided, [Matthew] would owe the county $7,249.00 in principle and $27,403.00 in interest." Matthew did not provide a citation to support his assertion. Matthew did not attach any evidence to his points and authorities. In the Department's response to Matthew's laches action, it made an offer of proof reflecting Matthew owed the Department $7,249 in principal and $27,463.01 in interest.

For the sake of addressing this issue, we will treat the Department's offer of proof as a stipulation between the parties, because the numbers offered by the parties are sufficiently close. Despite this stipulation, there is no evidence as to what portion of the interest accrued through June 2004 and what amount of interest accrued after June 2004. Without such evidence, we cannot conclude Matthew was prejudiced by the

19

Department's delay in seeking enforcement of the child support arrears because we cannot determine if the interest that accrued during the period of nonenforcement was somehow unreasonable.  In sum, Matthew failed to demonstrate prejudice resulted from a delay by the Department.

## C.     DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

CERTIFIED FOR PARTIAL PUBLICATION

MILLER
Acting P. J.

We concur:

CODRINGTON
J.

FIELDS
J.