MILLER, Acting P.J.
*683 In 1990, the family court entered a judgment of dissolution of marriage for appellant Matthew Albert Parker and respondent Mary Katherine Parker. Mary[1] and Matthew shared two children. In 2014, Matthew sought an order (1) requiring respondent San Bernardino County Department of Child Support Services (the Department) to prepare an accounting of the child support arrears owed by Matthew; and (2) discharging the child support arrears for the period in which the children resided with Matthew ( Trainotti[2] credits). The family court denied Matthew's requested order.
Matthew raises two issues on appeal. First, Matthew contends res judicata and collateral estoppel do not bar an award of Trainotti credits. Second, Matthew asserts the family court erred by not applying the doctrine of laches to discharge the arrears owed to the Department. We affirm the judgment.
A. FACTUAL AND PROCEDURAL HISTORY
1. 1990 DISSOLUTION
Mary and Matthew's two children were born in 1987 and 1988. In 1990, the family court entered an order for the dissolution of Mary and Matthew's marriage and ordered Mary and Matthew to share joint legal custody of the children. The court awarded Mary primary physical custody of the children. The court ordered that Matthew would have physical custody of the children "during reasonable times and for reasonable periods," which included three weekends per month. The exchange of the children for visitation was to occur at a public parking area adjacent to the San Bernardino County Sheriff's *684 Station. Matthew was ordered to pay child support in the amount of $137 per child, per month-a total of $274 per month. *346 The family court ordered Mary and Matthew (1) not to remove the children "from the seven southernmost counties of the State of California without prior written consent of the other party, or prior order of the court"; and (2) to notify one another in writing, within 72 hours, of any changes to his/her address and/or telephone number.
2. 2007 REQUEST FOR JUDICIAL DETERMINATION OF ARREARAGES
In August 2007, Matthew filed a request for a judicial determination of arrearages. Matthew asserted the Department sought $83,629.58 in child support arrears from Matthew. Matthew declared the children resided with him from February 1993 until the children reached age 18, and he received no child support from Mary. Matthew asserted that because he was the sole provider for the children for the majority of their lives, the family court should find Matthew did not owe child support arrears. Matthew attached a variety of documents to his request, such as the children's school and medical records
The Department responded to Matthew's request. The Department conceded that, pursuant to Trainotti , Matthew would not owe child support for the period in which the children were residing with Matthew.
In October 2007, the family court held a hearing on Matthew's request. At the hearing, Matthew explained that he took custody of the children after Mary called Matthew's parents and said Matthew could take the children. Mary and the children were residing in Texas. Matthew was residing in Oregon. Matthew borrowed money from his parents for airfare. Matthew flew to Texas and retrieved the children. Matthew told Mary he was taking the children to Oregon. Matthew and Mary did not discuss the cost of airfare. Matthew and the children flew to Oregon. The children resided with Matthew from that point onward.
Mary explained that, when she moved to Texas, she did not know Matthew's contact information. Mary went to Matthew's house in California, but he had moved. When Mary was unpacking in Texas, she found Matthew's parents' contact information and telephoned them to provide them with her new contact information in Texas. When Matthew arrived in Texas to take the children to Oregon, Mary believed they were going for a month-long visit to Matthew's parents' home in Canada. Mary did not know Matthew lived in Oregon. Mary permitted Matthew to take the children on the condition the children would return in early March.
*685 When Matthew did not return the children in March, Mary contacted Matthew's parents. Matthew's parents told Mary "not to call there anymore." Mary "filed a Foreign Judgment in August of [19]94." However, because Mary did not know where Matthew was located, she was unable to pursue any further action.
Matthew responded that, when he took the children, it was for a visit of undetermined length. Matthew explained that, at some point, Mary telephoned Matthew in Oregon and asked him if he planned to return the children to Texas. Matthew told Mary he borrowed money for the cost of traveling to Texas and then back to Oregon when he retrieved the children, so Matthew could not afford to return the children to Texas. Matthew offered to return the children to Texas if Mary would contribute to the cost of transportation. Mary never contacted Matthew again.
Mary said she did not recall having a telephone conversation with Matthew after Matthew took the children. Mary said she *347 did not contact the court about regaining physical custody of the children because she had tried to work with other agencies. Mary explained she had contacted "America's Most Wanted" about the case.
The family court said, "[T]he pleading is one to Determine Arrears, but I see it's more in the nature of Trainotti Credits. So that's how I'm going to address the ruling." The family court found Matthew "extorted these children and kept them from [Mary] even though she had been the parent granted custody. He conditioned the return on her paying for the travel expenses which was not something that was discussed nor is a condition of the judgment." The court said, "For those reasons, this motion which is being treated as a Motion for Trainotti Credit is denied. There will be no Trainotti Credits in this matter." The family court explained Matthew "wrongfully kept these children from [Mary]," and Matthew was required to pay the child support arrears.
3. 2014 REQUEST FOR TRAINOTTI CREDITS
In December 2014, Matthew filed a request for an order (1) requiring the Department to prepare an accounting of the child support arrears owed by Matthew; and (2) awarding Matthew Trainotti credits. In a declaration attached to the request, Matthew asserted Mary was dishonest at the 2007 hearing. Matthew declared he obtained evidence to support a finding Mary knew, as early as 1991, that Matthew resided in Oregon. Matthew attached envelopes addressed to Matthew in Oregon with postmarks of 1991, 1992, and 1993. The envelopes either lacked a return address or gave Matthew's address as the return address. Matthew also attached letters, written by *686 "Kathi." Matthew declared the letters were from Mary. One letter is dated "December 27, 199"-the final digit is not visible. A second letter is dated February 13, 1992.
Matthew provided points and authorities in support of his request. First, Matthew asserted Mary should no longer receive child support payments because Mary had unclean hands due to her deceit at the 2007 hearing. Second, Matthew contended laches barred the Department from collecting the arrears. Matthew asserted the Department did not attempt to collect the support payments from 1991 through 2007. Matthew contended it was unjust for the Department to collect a debt after 16 years of failing to act.
Third, Matthew, asserted "the determination of true Trainotti credits was not made" because Mary "committed fraud on the court." In support of this assertion, Matthew cited a statute authorizing exemplary damages when a defendant is guilty of oppression or fraud. ( Civ. Code, § 3294, subd. (a).)
Mary responded via a declaration. In the declaration, Mary pointed out various alleged inconsistencies in Matthew's prior statements. The Department responded with points and authorities. The Department asserted res judicata barred an award of Trainotti credits because, in 2007, the family court denied Matthew's request for Trainotti credits. The Department asserted the family court, in 2007, determined the veracity of Mary's statements, so that issue had already been decided. Alternatively, the Department contended Matthew was not diligent in seeking relief from the 2007 order.
Further, the Department asserted Matthew had unclean hands because he wrongfully took the children to Oregon. Next, the Department contended laches did not apply because (1) most of the arrears were owed to Mary, not the Department; and (2)
*348 the Department had been trying to collect arrears from Matthew since 2008.
On May 27, 2015, the family court held a hearing on Matthew's request. At the hearing, the Department asserted (1) Matthew had unclean hands, due to wrongfully taking the children, and therefore did not qualify for equitable relief; (2) the issues of Trainotti credits and veracity were res judicata to the 2007 ruling; and (3) Matthew was not diligent in seeking relief. In regard to diligence, the Department asserted Matthew failed, in 2007, to file a petition for reconsideration, to seek to set aside the findings, and/or appeal.
Matthew asserted that, if Mary believed Matthew kidnapped the children, she should have contacted law enforcement, which she did not do, and she did not return to the courts. Matthew asserted Mary did not want the children returned to her, hence, her lack of communication. Matthew explained that he *687 did not file an appeal or motion for reconsideration in 2007 because he was self-represented, the filings are difficult, and he lacked money. Matthew explained that he was seeking equitable relief based upon the fact that the children resided with Matthew, and Mary did not pay any child support.
The court denied Matthew's request for Trainotti credits, finding an award was barred by res judicata due to the 2007 ruling. The court found laches did not apply to the arrears owed to the Department because the Department had been making efforts to collect from Matthew since 2008.
B. DISCUSSION
1. TRAINOTTI CREDITS **
2. LACHES
Matthew contends the family court erred by not applying laches to discharge the arrears Matthew owes to the Department.
"Laches is based on the principle that those who neglect their rights may be barred, in equity, from obtaining relief." ( City of Oakland v. Oakland Police and Fire Retirement System (2014) 224 Cal.App.4th 210, 248, 169 Cal.Rptr.3d 51.) "The doctrine of laches is to actions in equity what statutes of limitations are to actions in law." ( Corona Properties of Florida, Inc. v. Monroe County (Fla. App. 1986) 485 So.2d 1314, 1318.) "In an action to enforce a judgment for child ... support, the defendant may raise, and the court may consider, the defense of laches only with respect to any portion of the judgment that is owed to the state." ( Fam. Code, § 291, subd. (d).)
In 2014, Matthew filed a request for an order (1) requiring the Department to prepare an accounting of the child support arrears owed by Matthew; and (2) awarding Matthew Trainotti credits. In Matthew's points and authorities filed in support his request, he argued the arrears owed to the Department should be discharged due to laches.
In the family court, Matthew was the petitioner and sought to use laches offensively, rather than defensively, to have the arrearages discharged. Matthew relies on Family Code section 291, subdivision (d). Such offensive use of the laches defense is not authorized by Family Code section 291, subdivision (d), *688 which specifically refers to "the defense of laches" being available "[i]n an action to enforce a judgment for child ... support." (Italics added.)
Matthew cites no authority for the proposition that the equitable defense of laches can be asserted offensively as a basis for relief. Laches may be used only *349 as a shield, not as a sword. ( LaPrade v. Rosinsky (D.C. 2005) 882 A.2d 192, 198 ; Corona Properties of Florida, Inc. v. Monroe County , supra , 485 So.2d at p. 1318.) Matthew was the party seeking a remedy in the family court, therefore, he cannot assert laches.
To the extent a petitioner can assert the defense of laches to obtain relief, we conclude the family court did not err. "A defendant must demonstrate three elements to successfully assert a laches defense: (1) delay in asserting a right or a claim; (2) the delay was not reasonable or excusable; and (3) prejudice." ( Magic Kitchen LLC v. Good Things Intern. Ltd. (2007) 153 Cal.App.4th 1144, 1157, 63 Cal.Rptr.3d 713.) Matthew bore the burden of proving laches applies. ( Highland Springs Conference and Training Center v. City of Banning (2016) 244 Cal.App.4th 267, 282, 199 Cal.Rptr.3d 226.) Because the facts are largely undisputed, we will apply the de novo standard of review. ( San Bernardino Valley Audubon Society v. City of Moreno Valley (1996) 44 Cal.App.4th 593, 605, 51 Cal.Rptr.2d 897.)
We examine whether the Department delayed in asserting a right or claim. The order for child support was entered in February 1990, when Mary and Matthew divorced. Therefore, the right or claim to child support was immediately exercised. There was no delay in obtaining an order requiring Matthew to pay child support.
Mary received public assistance. Because Mary received public assistance, the Department could be reimbursed for the public assistance from Matthew's child support payments. (Former Welf. & Inst. Code, § 11350, subd. (a)(1) ; City and County of San Francisco v. Thompson (1985) 172 Cal.App.3d 652, 659, 218 Cal.Rptr. 445.) The Department was required to enforce the child support order. (Former Welf. & Inst. Code, § 11475.1, subd. (a).)
In October 1991, the Department filed an order to show cause re: contempt (OSC). The Department asserted Matthew owed $3,288 in child support and Mary was receiving public assistance. In January 1992, the OSC was taken off calendar due to Matthew not being served; Matthew was not served because Matthew had moved to Oregon. The Department acted immediately by filing for an OSC; however, it delayed because it failed to serve Matthew. Because one could reasonably find the Department delayed in enforcing the child support order, we will examine the issue of prejudice.
*689 Matthew needed to show he suffered prejudice as a result of the Department's alleged delay. ( Johnson v. City of Loma Linda (2000) 24 Cal.4th 61, 67, 99 Cal.Rptr.2d 316, 5 P.3d 874.) We focus on the causation requirement-whether the prejudice resulted from, i.e., was caused by, the Department's alleged inaction. The Department had an interest in the child support payments from Matthew because Mary was receiving public assistance. The Department had the right to collect reimbursement for the public assistance from the child support sent by Matthew. ( Welf. & Inst. Code, § 11477, subd. (a)(1)(A) ; In re Marriage of Lugo (1985) 170 Cal.App.3d 427, 436, 217 Cal.Rptr. 74.)
Matthew asserts he suffered prejudice because excessive interest accrued on the arrears. A declaration by Matthew reflects he chose to stop paying child support in August 1990. Because Matthew chose not to pay his court-ordered child support, interest accrued. The accrual of interest is due to Matthew's inaction, not the Department's. Therefore, any interest Matthew must pay is self-imposed. The evidence reflects the interest payments resulted from Matthew's decision to stop making *350 child support payments. Thus, any prejudice did not result from a delay by the Department.
Next, we focus on whether prejudice was shown. The record reflects the Department did not make collection efforts between January 1992 and June 2004-approximately 11.5 years. Matthew brought his laches action approximately 11 years later; raising laches in his points and authorities, which were filed in May 2015.
In Matthew's 2015 points and authorities he wrote, "According [to] the numbers that the county provided, [Matthew] would owe the county $7,249.00 in principle and $27,403.00 in interest." Matthew did not provide a citation to support his assertion. Matthew did not attach any evidence to his points and authorities. In the Department's response to Matthew's laches action, it made an offer of proof reflecting Matthew owed the Department $7,249 in principal and $27,463.01 in interest.
For the sake of addressing this issue, we will treat the Department's offer of proof as a stipulation between the parties, because the numbers offered by the parties are sufficiently close. Despite this stipulation, there is no evidence as to what portion of the interest accrued through June 2004 and what amount of interest accrued after June 2004. Without such evidence, we cannot conclude Matthew was prejudiced by the Department's delay in seeking enforcement of the child support arrears because we cannot determine if the interest that accrued during the period of nonenforcement was somehow unreasonable. In sum, Matthew failed to demonstrate prejudice resulted from a delay by the Department.
*690 C. DISPOSITION
The judgment is affirmed. Respondents are awarded their costs on appeal.
We concur:
CODRINGTON, J.
FIELDS, J.

We use first names for the sake of clarity. No disrespect is intended.

In re Marriage of Trainotti (1989) 212 Cal.App.3d 1072, 261 Cal.Rptr. 36 (Trainotti ).

See footnote *, ante.